UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE ANDREWS,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | Case No. ED CV 14-643-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

    On April 3, 2014, plaintiff Darlene Andrews filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred when he determined plaintiff did not meet Listing 12.05C; and (2) whether the ALJ erred in relying on vocational expert ("VE") testimony that deviated from the Dictionary of Occupational Titles ("DOT") without obtaining an explanation for the deviation. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-10; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-7.

Having carefully studied the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly found plaintiff did not meet or equal Listing 12.05C and the VE provided persuasive evidence to support her deviation from the DOT. Consequently, this court affirms the decision of the Commissioner denying benefits and dismisses this action with prejudice.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-three years old on her alleged disability onset date, completed high school and acquired a Certified Nursing Assistant ("CNA") license. AR at 33, 218, 229. Her past relevant work was as a CNA, and a housekeeper. *Id.* at 48, 93, 229.

On April 8, 2011, plaintiff filed an application for a period of disability and DIB, as well as an application for SSI, alleging an onset date of October 16, 2010, due to nerve damage to both hands, hernia, sciatic nerve pain in back, pain in hip, hearing and vision ailments, thyroid problems, and mental health issues. *Id.* at 120, 215-224, 228, 249. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id.* at 94, 105, 118, 130, 142-46, 148-152, 153.

On August 7, 2012 plaintiff and her sister appeared and testified at a hearing

before the ALJ. *Id.* at 57-82. The ALJ continued the hearing to allow plaintiff to submit additional medical records and have a psychological evaluation performed. *Id.* at 81-82. On December 21, 2012, plaintiff appeared and testified again before the ALJ. *Id.* at 30-34, 40-46, 51-54. Medical expert Dr. David Glassmire and VE Sandra Fioretti also testified. *Id.* at 34-39, 46-51. On January 15, 2013, the ALJ denied plaintiff's applications for benefits. *Id.* at 11-21.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 16, 2010, the alleged onset date. *Id.* at 13.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: psychotic disorder, not otherwise specified; mood disorder, not otherwise specified; history of left De Quervian's release; lumbar degenerative disc disease; and obesity. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* The ALJ specifically considered Listings 1.04 and 11.14 and found "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment." *Id.*

The ALJ additionally considered plaintiff's mental impairments and found that they "singly or in combination, do not meet or medically equal the criteria of listings 12.03 and 12.04." *Id.* at 14. In his "paragraph B" analysis, the ALJ found plaintiff had only "mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one to two episodes of decompensation of extended duration." *Id.* The ALJ also determined "the evidence fails to establish the presence of the 'paragraph C' criteria of listings 12.03 and 12.04." *Id.*

1  The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that she had the RFC to perform medium work, with the limitations that plaintiff could: occasionally climb ladders, ropes, and scaffolds, but is restricted to performing all other postural activities frequently; and perform frequent but not constant fine manipulation tasks with the left upper extremity; perform non-complex and routine task. *Id.* at 14-15. The ALJ also determined that plaintiff could not perform tasks requiring hypervigilance, interact with the public, or be responsible for the safety of others. *Id.* at 15.

The ALJ found, at step four, that plaintiff could perform her past relevant work as a housekeeper as generally performed according to the DOT and as actually performed by plaintiff. *Id.* at 21. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

**A.   The ALJ Properly Found Plaintiff's Impairments Did Not Meet or Equal Listing 12.05C**

Plaintiff contends the ALJ erred at step three. P. Mem. at 3-8. Specifically, plaintiff argues that she meets Listing 12.05C. *Id.* The court disagrees.

At step three, the claimant has the burden of proving that he or she meets or equals a Listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To meet Listing 12.05 (Intellectual Disability) a claimant must

5

first satisfy *all* the criteria in the introductory paragraph before the ALJ will consider whether the claimant satisfies the requirements of any one of the Listing's other four paragraphs A through D. 20 C.F.R. part 404, Subpart P, Appendix 1, § 12.00.

A claimant meets Listing 12.05C, only if the she can prove she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" as well as "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*, § 12.05. Once a claimant meets all these requirements, to determine if a claimant qualifies under paragraph C the ALJ is required to:

> assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if [the claimant is] unable to do [her] past work because of the unique features of that work.

*Id.*, § 12.00.

Plaintiff claims she satisfied the requirements of Listing 12.05C because she has a full scale IQ score of 70 and the record clearly reflects plaintiff has significant additional severe limitations as evidenced by the ALJ's step two findings. AR at 13, 387. Although the IQ test was performed while plaintiff was forty-six years-old, she contends that "generally an individual's IQ scores fo not

6

fluctuate significantly over time." P. Mem. at 5-6; *see* AR at 384. Therefore, plaintiff argues her impairments are medically equal to the Listing and the ALJ either failed to properly consider Dr. Gamboa's test results or failed to provide a sufficient explanation of "his evaluation of alternative tests and the combined effects of the impairments," thus preventing meaningful review. *Marcia v. Sullivan*, 900 F.2d 172 at 176 (9th Cir. 1990); P. Mem. at 6; *see Lamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987).

Defendant argues the ALJ neither disregarded Dr. Gamboa's test results nor failed to provide an adequate explanation at step three, because plaintiff simply does not meet all the stringent requirements of Listing 12.05's introductory paragraph. D. Mem at 3-4; *c.f. Kennedy v. Colvin*, 738 F.3d 1172, 1177 (9th Cir. 2013) (finding no medical equivalence between a very severely impaired individual with an IQ of 71 and a claimant who minimally meets Listing 12.05C with an IQ of 70). The court agrees. Plaintiff failed to provide any "evidence [that] demonstrates or supports onset of the impairment before age 22." 20 C.F.R. part 404, Subpart P, Appendix 1, § 12.05; D. Mem at 3-4; P. Mem. 3-8. An IQ test conducted at age forty-six does not evidence plaintiff's impairment prior to age twenty-two. *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (finding no evidence of onset of the impairment before age twenty-two when IQ test performed at the age of forty-two revealed a full scale score of 69).

Furthermore, to meet Listing 12.05 plaintiff must provide evidence of "deficits in adaptive functioning" prior to age twenty-two. 20 C.F.R. part 404, Subpart P, Appendix 1, § 12.05. The weight of the evidence does not support this contention: plaintiff graduated from high school having attended regular and not special education classes (AR at 60, 385); she acquired her CNA and successfully worked as a nursing assistant at age forty-one (*id.* at 61, 229); her sister stated plaintiff's "mental problems" started around the age of thirty-five close to the time

their mother passed away (*id.* at 73); and, while being examined by Dr. Gamboa plaintiff did not present any history of mental health issues occurring prior to age forty-five. *Id.* at 385; *see Foster*, 279 F.3d at 352, 355 (holding dropping out of school after attending special education classes through the ninth grade, and failing to earn a GED after four attempts, insufficient to show a deficit in adaptive function under Listing 12.05 because plaintiff's employment history well after age twenty-two evidenced her ability to perform complex work-related tasks).

Plaintiff had the burden to provide *evidence* that she met or equaled Listing 12.05, which she failed to do. Substantial evidence supports the ALJ's conclusion that plaintiff fails to meet the requirements of Listing 12.05C.

**B.     The VE Provided an Explanation for her Deviation from the DOT**

Plaintiff contends the ALJ erred at step four because he improperly relied on the testimony of the VE, who identified a job that exceeded plaintiff's RFC. P. Mem. at 5-7. Specifically, plaintiff argues the ALJ failed to identify or resolve the conflict between the DOT's requirement that a housekeeper "render[] personal assistance to patrons" (U.S. DEP'T. LAB., DICTIONARY OCCUPATIONAL TITLES, ADMINISTRATIVE ASSISTANT, DICOT 323.687-014, 1991 WL 672783 (4th ed. rev. 1991)) [hereinafter "DOT"], and plaintiff's RFC under which she is to "have no interaction with the public." AR at 15; P. Mem. 5. The court disagrees.

At step four, plaintiff must prove she is unable to perform her past relevant work either as she actually performed it, or as it is generally performed. *Pinto v. Massanari*, 249 F. 3d 840, 845 (9th Cir. 2001). At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step four or five, the evidence must demonstrate either that plaintiff can perform his past work, or that other work exists in significant numbers in the national economy that the claimant

can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (stating the DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p).[2] But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, the ALJ, asked the VE if her "testimony [was] consistent with the Dictionary of Occupational Titles?" AR at 51. The VE responded in the

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

affirmative, thereby fulfilling the ALJ's initial obligation to inquire whether the VE's testimony conflicted with the DOT, but that was not the end of the ALJ's obligation. *Id.* Where a VE wrongly testifies that there is no conflict, but "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). The ALJ errs if he or she fails to obtain an explanation for and resolve an apparent conflict – even if the VE did not identify the conflict. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (asserting ALJ erred in relying on VE's faulty testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

      The ALJ determined plaintiff's RFC restricts her from jobs requiring "interaction with the public." AR at 15. At the hearing, the ALJ's hypothetical to the VE included this restriction. *Id.* at 50. The VE asked plaintiff to clarify the type of work she performed as a housekeeper at a business office. *Id.* at 49. Plaintiff described her past relevant work as janitorial in nature, including "[d]usting, vacuuming, [and] cleaning the bathrooms." *Id.* The VE classified this work as "cleaner, housekeeping, DOT code 323.687-014," which is "light and unskilled" work. *Id.* The VE testified a hypothetical individual of plaintiff's age, education, work experience, and RFC could perform plaintiff's past relevant work as a housekeeper. *Id.* at 50. Based on the VE's testimony, the ALJ found plaintiff "is able to perform the past relevant work as a housekeeper as generally performed and as actually performed." *Id.* at 21.

The ALJ's finding that plaintiff was able to perform the work of a housekeeper as it is generally performed was likely in error. According to the DOT, a housekeeper must "render[] personal assistance to patrons." DOT 323.687-014. On its face, this conflicts with plaintiff's RFC, which prohibits her from interacting with the public. *See Norris v. Colvin*, 2013 WL 3676661, at *3 (C.D. Cal. July 11, 2013) (finding DOT 323.687-014 incompatible with RFC calling for no interaction with the public); *Barton v. Astrue*, 2012 WL 5457462, at *3 (C.D. Cal. Nov. 8, 2012) (same); *Pardue v. Astrue*, 2011 WL 5520301, at *4 (C.D. Cal. Nov. 14, 2011) (same). Although the VE acknowledged this conflict to some extent and testified that the job would not require interaction with the public because "the contact is really incidental," it was not clear that the VE was testifying to the requirements of the job as generally performed. *See* AR at 50.

But any error by the ALJ in finding plaintiff was able to perform her past work as generally performed was harmless, as plaintiff fails to meet her burden of proving she is unable to perform her past relevant work as she actually performed it. *See Pinto*, 249 F. 3d at 845. Plaintiff argues her RFC limits her to "non-public work activity" and as such she is unable to "render personal assistance to patrons" or perform other duties "requir[ing] public work activity." P. Mem. at 9. But, as defendant asserts, the RFC only restricts plaintiff from "work that require[s] her to 'interact' with the public," not all public activity. D. Mem. at 6; *see* AR at 14-15. After questioning plaintiff and determining that the housekeeping work she did simply involved cleaning an office, the VE testified that, as plaintiff performed the work "the contact [wa]s really incidental, just working around people . . ." *Id.* "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p. An ALJ may rely on the testimony of a VE "to provide more specific information about jobs or occupations than the DOT." *Id*;

*Massachi*, 486 F.3d at 1152-53; SSR 00-4p.  The ALJ explicitly asked the VE if "the job itself would [] require interaction with the public" and the VE responded in the negative.  AR at 50.

The ALJ properly relied on the VE's testimony, which provided persuasive evidence to support her deviation from the DOT.  The ALJ did not err at step four in finding plaintiff could perform her past work as a housekeeper as she actually performed it.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: July 16, 2015   _____

SHERI PYM
United States Magistrate Judge